UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 19 2016 ★
BROOKLYN OFFICE

|  |  |
| --- | --- |
| UNITED STATES OF AMERICA | 1:15-CR-00164-JBW |
| – against – | Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)(2) |
| LEONARDO ROSARIO, | |
| Defendant. | |

**Appearances**

**For United States:**         Nadia Elizabeth Moore, Esq.
                               United States Attorney's Office
                               Eastern District of New York
                               271 Cadman Plaza East
                               Brooklyn, NY 11201
                               (718) 254-6362
                               nadia.moore@usdoj.gov

**For Defendant:**             Todd A. Spodek, Esq.
                               100 Church Street, 8th Floor
                               New York, NY 10007
                               (212) 300-5196
                               ts@spodeklawgroup.com

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Table of Contents**

I.   Introduction ................................................................................................................. 1
   A.   Instant Offense: Filing False Tax Returns (Counts 1 through 3) ......................... 2
   B.   Arrest ...................................................................................................................... 3
   C.   Guilty Plea ............................................................................................................. 3
   D.   Sentencing ............................................................................................................. 4
II.  Offense Level, Category, and Sentencing Guidelines Range ................................. 4
III. Law ........................................................................................................................... 5
IV.  18 U.S.C. § 3553(a) Considerations ........................................................................ 6
V.   Sentence .................................................................................................................... 7
VI.  Conclusion ................................................................................................................ 8

## I. Introduction

Defendant Leonardo Rosario is an immigrant from the Dominican Republic, born to a poor family. Mr. Rosario came to the United States in 1979 when he was 21 years old. When he arrived, he did not speak English, had little education and no job prospects.

Since 2002, Mr. Rosario has owned and operated Master Iron Works, Inc. ("MIW"), in Brooklyn, New York. *See* Presentence Investigation Report ("PSR") at ¶ 3. MIW provides installation services to builders and developers in the New York area, including steel railings, structural steel, stairs, beams, and columns. *Id.* An investigation conducted by the Internal Revenue Service ("IRS") determined that the defendant failed to report a substantial portion of gross receipts generated by MIW on MIW's income tax returns for tax years 2008-2010. *Id.*

On June 1, 2015, the defendant pled guilty to all counts of a three-count indictment before United States Magistrate Judge Steven M. Gold. PSR at ¶ 1. Counts 1 through 3 charge

1

that from 2008 to 2010, Mr. Rosario filed false tax returns for his business, in violation of 26 U.S.C. § 7206(1). *Id.* Mr. Rosario has complied with all Court-ordered conditions of release, and the government recognizes his full cooperation and acceptance of responsibility. *Id.* at ¶ 2, ¶¶ 15-16.

On February 8, 2016, Mr. Rosario was sentenced to four years probation, a $300 special assessment, and ordered to pay restitution in the amount of $738,614. *See* Hr'g Tr., Feb. 8, 2016.

### A. Instant Offense: Filing False Tax Returns (Counts 1 through 3)

The investigation into the instant offense originated with information received from the Federal Construction Fraud Task Force, Check Cashing Project. PSR at ¶ 4. The investigation conducted by IRS Special Agents included interviews with the defendant's tax preparer, a review of checks cashed by the defendant, and a review of the bank account used by the defendant for business purposes. *Id.*

MIW maintains a bank account with JP Morgan Chase Bank. *Id.* at ¶ 5. The defendant has sole signatory authority over this account (the "Account"). *Id.* He is responsible for MIW's routine financial transactions, including paying bills, signing checks, depositing checks, and other general banking. *Id.* Between 2008 and 2010, Mr. Rosario provided MIW's bank information to its tax preparer, Angel M. Arias. *Id.* Interviews conducted with Mr. Arias revealed that for each of the tax years, Mr. Rosario would visit Mr. Aria's place of business monthly, and provide him with the bank statements from the account. *Id.* Mr. Arias would complete the corporate tax returns for MIW solely based upon the information that Mr. Rosario provided him. *Id.*

Between 2008 and 2010, the defendant cashed more than $2 million in checks at a check cashing store. Because the checks were not deposited into MIW's bank account, they were not

accounted for on MIW's tax returns. The defendant withheld the existence of these checks from his tax preparer, resulting in an underpayment of taxes in the amount of $738,614. *Id.* at ¶9.

In statements to agents, Mr. Rosario admitted to cashing millions of dollars in checks written to MIW at a check cashing location. *Id.* at ¶ 10. The defendant admitted that he did not deposit any of these funds into MIW's bank account. *Id.* He further stated that he used the cash derived from the checks for business related expenses, "off the books" payroll, and off-track betting and gambling. *Id.* Mr. Rosario admitted to knowingly and willfully withholding the existence of these checks from his tax preparer, and therefore signing false tax returns. *Id.*

The sole victim in the instant offense is the Internal Revenue Service. *Id.* at ¶ 12. The IRS has suffered a tax loss in the amount of $885,440, which was adjusted to $738,614 to account for certain setoffs. *Id.;* Hr'g Tr., Feb. 1, 2016.

**B.     Arrest**

Defendant self-surrendered in the Eastern District of New York on May 21, 2015. PSR at ¶ 11. He was released on an unsecured $40,000 bond, with Pretrial Services supervision conditions, all of which the defendant fully complied with. *See* PSR at 1.

**C.     Guilty Plea**

On June 1, 2015, the defendant pled guilty to all counts of the three-count indictment before United States Magistrate Judge Steven M. Gold. Counts 1 through 3 charge that from 2008 to 2010, Mr. Rosario filed false tax returns for his business, in violation of 26 U.S.C. § 7206(1). PSR at ¶ 1. Mr. Rosario's guilty plea spared the Court and the Government the burden of preparing for trial. *Id.* at ¶ 16. Accordingly, a reduction for acceptance of responsibility is warranted.

### D. Sentencing

A sentencing hearing was held on February 1, 2016. *See* Hr'g Tr., Feb. 1, 2016. The testimony made it clear that the ability of Mr. Rosario's eldest son to operate his own iron works business will be instrumental to the defendant's likelihood of paying back the government. The sentencing hearing was continued on Feb. 8, 2016, at which time defendant's son and brother provided testimony for the court. The proceedings were videotaped to develop an accurate record of courtroom atmosphere, as well as the factors and considerations that a court evaluates in imposing a sentence. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (describing the value of video recording for the review of sentences on appeal).

## II. Offense Level, Category, and Sentencing Guidelines Range

The base offense level is 20. PSR at ¶ 19. The offense level was decreased by two levels pursuant to U.S.S.G. § 3E.1.1(a) for defendant's acceptance of responsibility, and one additional level pursuant to U.S.S.G. § 3E.1.1(b) for defendant providing notice to the government in a timely manner of his intention to enter into a guilty plea. *Id.* at ¶¶ 26-27. The total adjusted offense level is 17. *Id.* at ¶ 28. The parties do not object to the above Guidelines calculation.

Defendant's criminal history score is zero. PSR at ¶ 31. According to the Guidelines, a criminal history score of zero establishes a criminal history category of I. *Id.* The Guidelines' range is 24 to 30 months imprisonment. *Id.* at ¶ 72.

Pursuant to the Supreme Court's decision in *United States v. Booker*, the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as in light of other statutory concerns as expressed in section 3553(a). *United States v. Booker*, 543 U.S. 220, 245-46 (2005); *see also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*) ("It is now, however, emphatically clear that the Guidelines are guidelines – that is, they are truly advisory. A district court may not presume that a Guidelines sentence is reasonable; it

4

must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.").

**III.    Law**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in section 3553(a)(4) of title 18, the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now advisory rather than mandatory, *Booker*, 543 U.S. at 245-46, the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006), abrogated in part on other grounds by *Kimbrough v. United States*, 552 U.S. 85 (2007). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) *(en banc)* (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

In view of the excessive incarceration rates in the recent past and their unnecessary, deleterious effects on individuals sentenced, society and our economy, parsimony in incarceration is to be prized. *See, e.g.,* 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary."); National Research Council of the National Academies, *The Growth of Incarceration in the United States, Exploring Causes and*

5

*Consequences*, 8 (2014) ("*Parsimony*: the period of confinement should be sufficient but not greater than necessary to achieve the goals of sentencing policy.").

IV.     **18 U.S.C. § 3553(a) Considerations**

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

The defendant has three children with his first wife, Yolanda Medina (age 50). PSR at ¶ 42. The children's ages are 34, 30, and 29. *Id.* Mr. Rosario's relationship with Ms. Medina lasted 15 years before they separated. *Id.* Subsequently, the defendant married Yenisse Cavallo (age 39) in Santo Domingo, Dominican Republic. *Id.* at ¶ 44. The marriage lasted 13 years and produced one daughter, who resides with her mother in the Domincan Republic, but regularly visits her father in New York, sometimes staying with him for long periods of time. *Id.* The defendant provides financial support for Yenile. *Id.* He also has two young children from another relationship. The children, who reside in Brooklyn with their mother, are close with their father. *Id.* He provides court-ordered financial support in the combined amount of $150 per week to the younger children, and also regularly sends money to his daughter in the Dominican Republic. *Id.* All six of the defendant's children depend on him. Hr'g Tr., Feb. 1, 2016.

The defendant's son described his father as having been remorseful for his conduct since beginning the government's four-year investigation. *Id.* He further testified that, if his father is unavailable to help with his business, the business will be severely impacted. While the defendant's son owns the business, it was made clear that he relies heavily on his father's substantial experience, contacts, and good reputation in the industry. Hr'g Tr., Feb 8, 2016. Were the defendant incarcerated, his son's business would be unlikely to continue, causing severe financial problems to the employees and the extended family.

For the reasons stated on the record, a custodial sentence is unnecessary. The defendant has demonstrated genuine remorse for his conduct, and a desire to work hard to repay the amount he owes the government. *See* Hr'g Tr., Feb. 1, 2016. Given the substantial, credible character testimony in Mr. Rosario's favor, it appears that these were isolated incidents contrary to defendant's character. *Id.* Mr. Rosario's eldest son and brother testified at the sentencing hearing how important to the son's business, and their respective livelihoods, is the defendant. Hr'g Tr., Feb. 8, 2016. They each described the defendant as someone they depend on, and expressed Mr. Rosario's selfless desire to "take care of everyone else." *Id.*

The harm that would be caused by a prison sentence far outweighs the benefits. The large Rosario family would all undoubtedly suffer, both financially and emotionally, and the government would be less likely to successfully recover the restitution it seeks.

## V. Sentence

Under section 3553(a)(2)(B) of title 18, a sentencing court must consider two major factors: general and specific deterrence.

In light of the nature of the offense and the characteristics of the defendant, Mr. Rosario is sentenced to probation for a term of four years. Hr'g Tr., Feb. 8, 2016. A $300 special assessment is imposed. Restitution in the amount of $738,614 is ordered. Defendant will pay 10 percent of his salary, after taxes, to the Clerk of the Court. This will be done until the full amount owing is met. If defendant fails to pay for six months, interest will be charged. If his income drops and Mr. Rosario cannot provide for his family, the payment plan will be revisited by the court. The defendant may not gamble, with the exception of one $4 lottery ticket per month.

General and specific deterrence are achieved by the sentence imposed.

## VI. Conclusion

All relevant elements of the Guidelines and statutes have been considered. Respectful consideration was given to the Sentencing Commission's policy statements, and all other factors listed under section 3553(a) of title 18, to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: February 10, 2016
Brooklyn, New York